Good morning, Your Honors. May it please the Court, my name is Lara Vinard and I represent the appellant, Jose Bernal Ramirez. I'd like to reserve one minute for rebuttal. I'd like to first address the 212H relief issue and then discuss Pereira. I do not have prepared remarks regarding the Cal Penal Code Section 245 issue, but I'm happy to answer any questions that the Court may have on that. First, with respect to 212H relief, the District Court assumed without deciding that Mr. Ramirez was statutorily eligible for that relief, and that was the correct assumption. The immigration judge and the attorney both had a duty to advise him about 212H because he was apparently eligible. And this Court has held that the applicant need not meet all statutory requirements on their face at the time of the hearing for that duty to advise to be triggered. Sotomayor Well, counsel, let's just look at that for a moment. Is it your argument that at the time of the hearing, the petitioner was eligible for 212H relief? Ramirez Your Honor, at the time he was apparently eligible, and here I would like to Sotomayor What do you mean by apparently eligible? Ramirez Yes, I'd like to direct the Court to Negrete Ramirez, and I'd like to do a more full analysis of Negrete Ramirez than I did in my reply brief. What Negrete Ramirez was considering is the statutory bar on 212H relief for someone who has committed an aggravated felony, and here I quote the bar, if that person has previously been admitted to the United States as an alien lawfully admitted for permanent residence. Now the issue with respect to the statutory bar for him is what does the word admitted mean? And Negrete Ramirez ultimately resolved that question in the context of this particular statutory bar. Sotomayor Well, but if Negrete Ramirez had not made that clarification at the time that he was before the I.J., the I.J. is not required to be clairvoyant regarding what the law is going to how the law is going to develop later. Ramirez I agree, but as I said, I would like to develop the Negrete analysis further than what's in my reply brief. Breyer Why didn't, why didn't, was it Summ, United States? Ramirez Summ is one of the cases that cited Negrete, and the other case that Breyer But Summ was out before his hearing, right? Ramirez Yes, that's Breyer Why doesn't Summ just, when I read Summ, it looked like he was eligible. Ramirez Yes, that's the point I'm trying to get to. And not only Summ, but Shavarman v. Ashcroft, both of those cases addressed aspects of the bar without specifically reaching the bar. Shavarman, I think, more importantly than Summ, because Shavarman established what admitted means. Now, Mr. Ramirez, very importantly, in Summ's case Breyer Well, so does Summ. Summ is the one that really goes through the statutory judgment, I think it's Judge McEwen's opinion. Ramirez Yes. Well, Summ involved a fraudulent admission as an LPR at the port of entry. And so Summ focuses on that. Breyer Right, but in their analysis, they do Ramirez Focus on the port of entry. Breyer That's correct. Ramirez I do want to make clear the point about Shavarman, because the issue with being admitted is that he was admitted when he entered as a V2 non-immigrant, before he adjusted status. So under Shavarman, it in fact would have been error for the I.J. at the time of his hearing to determine that he was admitted when he later adjusted to LPR status. All that Negrete Ramirez had to do was apply settled law, Shavarman and other cases that are cited in Negrete Ramirez to reach that conclusion. Breyer Well, we look at what the lawyer had to do and what the I.J. had to do at the time of the hearing. When was Negrete decided? Ramirez Negrete was decided after, but Shavarman establishing the lawyer Breyer Just all you have to do is focus on Summ. Ramirez And I would say Shavarman, Your Honor. Breyer Well, all right, both. Ramirez But both are very cheap. Breyer But the argument is, is at the time of the hearing, those cases were out. A reasonably competent attorney would have revised as a client that he could apply for 212-H relief, right? Ramirez Yes, yes, absolutely, absolutely. Sotomayor And the I.J. should have advised him as well. Ramirez Yes. Sotomayor That's your argument. Ramirez Yes, absolutely. And I think that is clear. I apologize that I did not do a more full review of Negrete in my brief. I do think it's clear if the Court believes in what Negrete relies on. Sotomayor Negrete doesn't help you.  That's what's important. Negrete is not doing anything. Confusing the matter. Okay, let's go to the next step. Ramirez Your Honor, the next issue is the hardship analysis. And here, the district court found that he would not have been able to show hardship to his mother under the relevant standard. And assuming, Arguendo, that it's a standard of extremely unusual hardship, the district court erred here because he did have evidence that he could plausibly have met that standard. The BIA has explained it's not so restrictive that only a handful of applicants will qualify, such as applicants who have a qualifying relative with a serious medical condition. And in fact, here, his mother had a number of serious medical conditions. Sotomayor But she also had other children who helped her, correct? Ramirez On that, I'd like to focus on several agency decisions that we've cited in the briefs, where people who were subject to this heightened bar were actually able to show extremely unusual hardship on facts that were lesser than the facts that Mr. Ramirez would have presented here. And first, I'd note a matter of RDE. This is cited in our brief. The stepson had ADHD. The applicant's initial application was denied and the stepson's grades suffered. There was a concern that the stepson would not receive treatment in Mexico and they didn't want him to relocate. That satisfied the extremely unusual hardship bar. Sotomayor But a child is in a little different dependency position than a mother is on one of her children, one of several children. You have a case that's close to this one where there are several children and one of the children is deemed to be in such a position that it would be an extremely serious hardship if that one child were deported. Do you have a case like that? Ramirez I don't think there's a case on either side. And of course, facts are going to be unique in each individual case. So I don't think there is a case where we've identified a particular child being the primary support where there was an emotional bond with that child only as a result of the family tragedy where the mother and son cared for the father as he died of brain cancer. And that son played the primary role in supporting the mother in her practical needs, in her medical needs and in her emotional needs. There is not a case on either side, I would agree. I also did want to point to another agency decision that involved a wife where she had, I would say, similar or perhaps less serious medical conditions. The applicant's name is redacted, but it's cited on our opening brief at 33, where the wife had chronic pancreatitis, depression, migraine headaches, and was stressed about relocation to another country. That met the extremely unusual hardship standard. Isn't the timing, though, a big issue for you? I mean, I think we can all concede that the mom had some very difficult circumstances, but doesn't she have to show or don't you have to show this removal proceeding? And he was in jail then, right? And had been for, he'd been out of the home for years at the time of the removal proceeding, right? I believe it was actually a short prison sentence. I would point the court to the unpublished decision, Beltran-Sandoval, where this court found that although the individual was in custody before the removal hearing, he had maintained his ties in prison. And that supported a finding of the hardship waiver and of plausibility. And here, Mr. Ramirez's parents, or his mother and siblings, drove four hours each way to visit him at the fire camps, where he, in fact, was working as a frontline firefighter on behalf of the state of California. But at the same time, his siblings were taking care of the mom, supporting her economically, right? She was? Your Honor, I don't believe she addressed that specifically. The siblings were there, the daughter had another family, and so the help the daughter provided was that the mother would sometimes move in with her. There was a son who lived with the mother who had his own difficulties. There was a third son that we didn't hear much about, and I believe is the one who gave her some money. But what I want to bring the court back to is that the emotional bond was with Mr. Ramirez. And he was the one that was providing the primary support to her, which the attorney who submitted the expert declaration identified as being highly significant to the analysis. And on this, I do, I believe that the court erred by not analyzing the basis for the expert's opinion. The expert went through point by point the different aspects of this record that would have helped him to show that he could meet that hardship standard. But, counsel, the I.J. was the attorney the court was not required to credit the expert's opinion, was it? The court was not required to credit it, but the court found no reason to dispute it. The court stated, accepting the declaration, I will find that he does not meet the hardship standard. Right. There was nothing about the declaration that was disputed by the government. There was no aspect of his qualifications. But the expert was trying to make a conclusion of law. Insofar as all of the factual matters were, that's fine for the court to accept. No court is required to accept the conclusions of law that are proffered by an expert. Well, Diaz explains that an expert can speak to legal terminology if it doesn't have a specialized legal meaning. The word plausibility does not have a specialized legal meaning, but leaving that aside, as the Court stated, what the expert offered here was an extensive analysis of the facts based on his own experience and his own familiarity with cases involving individuals with serious criminal records. So what case says that a court has to accept the conclusion of the expert, whether or not someone meets that definition? What case says that? Your Honor, I have not made that point. I have pointed to Arrieta, which found that the expert's conclusion supported the determination of plausibility. And there are a number of district court decisions that we've cited. I think Arrieta is one of the few at this level that has relied on an expert's opinion. So how could it be error, then, for the district court to say I've looked at the declaration, I'm not persuaded by it, I come to a different conclusion? How is that error? Well, what the court here did was rely on the same case the expert cited, Monreal, and then misread Monreal. Monreal talked about where sole support is shown for a particular parent, that would be a strong case. And what that doesn't have to be a winning case just because it's strong. So if the expert disagrees with the conclusion that the court reached after looking at the case authority, how is that error? It is error because here the court substituted its own determination of what Monreal meant. The expert is the one who is in immigration court arguing cases under Monreal and stated that primary support would be sufficient to meet the Monreal standard when we're talking about a plausibility analysis. The district court did not even acknowledge that the expert had reached that conclusion. And that is where the error lies. Okay. I'll give you a minute for rebuttal. Thank you, Your Honor. We'll hear from the government. Good morning, and may it please the court, Kirsten Ault for the United States. The district court correctly rejected Ramirez's collateral attack on his deportation order underlying his illegal reentry conviction. Because the immigration judge correctly ordered Ramirez deported under the law as it existed at the time of the immigration hearing. And the immigration judge had jurisdiction over the multiple hearings at which Mr. Ramirez personally appeared represented by counsel before he was ordered to port. Now, Judge Paius had asked a question about Sun. And so I would like to address how Sun did not establish that Mr. Ramirez was eligible for 212H relief at the time of his deportation hearing in 2013. Give it your best shot. Sun was decided in 2010. And Sun was decided in a different context. And when was the hearing here? The hearing here was in 2013. However, what happened in 2011 was Habibi was decided. And in Habibi, this court very clearly stated, LPRs convicted of aggravated felonies are not eligible for 212H relief. In 2012, the Board of Immigration Appeals handed down Rodriguez. And in Rodriguez, the Board of Immigration Appeals said, there are some circuit courts that have said that LPRs who enter, that the time when the status of a person when they enter the United States, whether they're an LPR or not, matters to 212H eligibility. In those circuits, the IJs have to follow those circuits' laws. In the circuits where the courts have not ruled that way or have cases going the other way, as in this circuit, IJs are bound by the BIA's opinion, which is that the timing of LPR status doesn't matter. So in 2013, the IJ in this case was bound by Rodriguez from the BIA and bound by this court's clear statements in Habibi and in Taniguchi, saying that LPRs are not- But what happened to Sum? Sum was decided in 2010. Yes. And in Sum- So Sum just dropped out of the picture? Sum was decided before Habibi. Habibi was a very clear statement in exactly the same context. Habibi can't overturn Sum. And Sum can't overturn Taniguchi. But a reasonably competent attorney reading Sum would say, there's a chance, you know, it's reasonable you should apply for 212H relief. Your Honor, he was not eligible for 212H relief in 2013 in this circuit because Taniguchi and Habibi had said that he was not. The fact that in a different context, in the Sum context, which was a different context dealing with a different issue, this court had made statements indicating that- Dealing with the same statute, right? The same bar. It was the same bar. However, it was a different issue because the issue was whether the petitioner who was admitted into the United States at a point of entry by misrepresenting his status- Right. He had- The panel was talking about what's good for the goose is good for the gander, right? Your Honor, the issue is what clear statements this court had made at the time about whether an LPR was eligible for 212H relief. And at that time, the clear statement that this court had made were made by Taniguchi and Habibi, and both of those cases said LPRs categorically are not eligible. The BIA gave the immigration judge clear instructions about what to do in that circumstance, and that was to hold that the petitioner was not eligible. And that's exactly what the immigration judge did here. And that's what this court said the immigration judge needs to do is provide notice based on the law at the time of the hearing, and that was the law at the time of the hearing. Was there some case cited by petitioner's counsel before the district court? I don't believe so, Your Honor, no. I don't think that was either. I think there are cases from this court that would support the proposition that we don't require IJs to be clairvoyant, right, and they follow the law of the circuit, but maybe a different standard for the lawyer, credible argument that the lawyer should have recognized that there was an issue and there was some different law out there and should at least have made the argument to preserve the issue. So if we go there, and let's say there was ineffective assistance of counsel, then what? Then I guess the argument from your side is no prejudice, right? Never would have got the relief anyway. Not plausible, right? That is correct, Your Honor. It's not plausible. But first, on the issue of ineffective assistance of counsel, the record is simply not developed on that. The only argument that we have for ineffective assistance of counsel is one paragraph in petitioner's brief. We don't know what the lawyer advised. Maybe the lawyer told Mr. Ramirez, look, the law could be changing. We could have an argument here. Maybe what you should do is hang out, wait in immigration detention, appeal this to the Board of Immigration Appeal, you know, wait and see if the law changes. You know, you have that option. However, you're probably going to be detained during that time. You're probably going to be sitting in immigration custody. And it could take years for that to happen, and you might not win. The lawyer could have provided him with that advice, and given that advice, Mr. Ramirez could have said, no, I don't want to do that. I just want to go back to Mexico. We don't know what happened. And because we don't know what happened, it's not appropriate for this Court at this time to consider whether the immigration attorney provided ineffective assistance of counsel, because we simply don't have a record that's developed on that. In addition, it is simply not plausible, as the district court found, that even if he had been advised that he could apply for 212-H relief, that 212-H relief would have been granted. First, Mr. Ramirez was convicted. It's not a high standard, right? It is a high standard, Your Honor. Well, he didn't have to show that it would have been granted. No, Your Honor. But he did have to show that it would have been the standard is ---- He didn't even have to show it would have been probable. But he had to show that the hardship ---- He had to show that there was a factual basis on which an I.J. could conclude that he's entitled to relief. Yes, but the high bar that he had to meet, the very high bar he had to meet, because he had been convicted of a violent crime. Remember, he had been convicted of holding a knife to a young man's throat and threatening to kill him, which in any measure is a violent crime. And because he had been convicted of that violent crime, he would have to meet the standard that his mother would suffer extraordinary circumstances resulting in exceptional and extremely unusual hardship. And that is a very high bar. And there is no plausible way that he would have been able to make that showing. As the district court in a very thorough and very well-documented opinion stated, he simply did not show that his mother would suffer anything beyond even the common results of deportation, let alone this extremely high bar that he would have been required to meet. The only hardship that ---- The only evidence that he put forth was his mother's declaration and the declaration of the immigration expert. And the only hardship that his mother claimed that she would suffer was minimal economic hardship. There was no evidence that he provided any real economic support to her. And in fact, it was the other way around. And the emotional hardship, as the district court found, was the emotional bond that he had with her and the emotional support that he provided was also provided by the three other children that she had who supported her both economically and emotionally. All of the cases that even Mr. Ramirez's immigration expert cited were vastly different from Mr. Ramirez's case. In all of those other cases, either the person was the sole financial and emotional support for the potentially deported alien or there were some extraordinary and more importantly well-documented factors. Here, there was no medical records, there were no tax returns, there was no documentation, as the district court found, that would support the sort of vague allegations that Mr. Ramirez's mother made that she would suffer extreme and extraordinarily unusual hardship if he were deported. So it is simply not plausible that even if he were eligible and even if the IJ had notified him that he was eligible to apply, that such relief would have been granted. And because the district court's very thorough and well-documented opinion is correct, we would submit that the court should affirm. Thank you. Counsel, did you cite the Sum case in your briefing? No, Your Honor. No. The other case... Our position is that Negrete Ramirez stated the correct interpretation of the law. Okay, so you're not relying on Sum? I am relying on Sum. But you didn't cite it in your briefing? Yes, Your Honor. And so you're saying that the IJ should have been aware of it, but you weren't aware of it for your brief? The IJ is presumed to be intimately familiar with the immigration laws. But so are attorneys who are representing clients are presumed to be familiar, especially if you're using it for your argument? Yes, Your Honor. I apologize. I considered submitting a 28J. I wasn't sure if that was appropriate since it's a foundational case for Negrete Ramirez. And what was the other case that you were citing? Shivaraman v. Ashcroft. Is that in your brief? No, Your Honor. And same, I considered submitting a 28J. However, it's foundational to Negrete Ramirez. 28Js are usually for cases that come up after you've completed your briefing, not for cases that you should have included in the original briefing. Yes, Your Honor. Now, I do want to disagree with government counsel stating that there were no medical records. Mr. Ramirez's mother submitted significant medical records regarding her medical issues, and she and her son documented his role in assisting her. It is not correct that we have insufficient evidence or insufficient development of the IAC claim. There is a declaration where it is actually myself who spoke with the prior attorney who stated that he believed that Mr. Ramirez was not eligible because he was an LPR. And the issue of ineffective assistance is developed legally and is tied to the same facts regarding the law at the time of the hearing. And I did want to apologize to the Court with respect to Garcia-Frausto. This is the case relied on by the Court. Sua Sponte, the parties didn't cite it with respect to practical and emotional support. That case is actually not citable. It's from 2002. I should have made that note in my own brief when I discussed it. Thank you. Thank you very much. Thank you, counsel. The matter is submitted.
judges: Paez, Rawlinson, Anello